**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
INTEGRATED SPORTS MEDIA, INC.,

                       Plaintiff,

                  - against -

EL GUADALAJARA, INC.,
*d/b/a* El Guadalajara,
ENRIQUE MALDONADO,

                       Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-2017 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Integrated Sports Media, Inc. ("Integrated Sports" or "Plaintiff") commenced this action against Defendants El Guadalajara, Inc., d/b/a El Guadalajara ("El Guadalajara") and Enrique Maldonado ("Maldonado") (collectively "Defendants") for violations of the Federal Communications Act of 1934 ("FCA"), codified at 47 U.S.C. §§ 605 and 553 ("Section 605" and "Section 553"). *See* DE 1. After Defendants failed to Answer or otherwise move with respect to the Complaint, Plaintiff moved for entry of a default judgment [DE 4] and a Notation of Default against Defendants was entered by the Clerk of the Court [DE 5]. District Judge Hurley entered a default judgment against the Defendants and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate in this matter. *See* Electronic Order dated December 9, 2010.

The Plaintiff seeks an award of statutory and enhanced damages pursuant to Section 605 totaling $30,000.[1] Plaintiff also seeks an award of pre-judgment interest and costs.[2]

## II. BACKGROUND

The Plaintiff entered into a closed-circuit television license agreement whereby Integrated Sports received the exclusive right to exhibit the closed-circuit telecast of the August 12, 2009 CONCACAF World Cup Qualifier Tournament which included the Trinidad & Tobago vs. El Salvador match (the "Event") at various commercial locations throughout New York. *See* Complaint, DE 1 ¶ 8. The Event could only be exhibited in an establishment that was contractually authorized to do so. *Id.* ¶ 10. Therefore, the transmission of the Event was electronically coded or "scrambled" and could only be seen clearly after it was decoded with electronic decoding equipment. *Id.* ¶ 12.

Pursuant to the license agreement, Plaintiff marketed and distributed the closed-circuit rights by contracting with various establishments for a fee. *Id.* ¶ 11. Those establishments which contracted with Plaintiff were provided with the decoding equipment and satellite coordinates

---

[1] In the Complaint, Plaintiff sought an award of damages under both Section 605 and Section 553 for a total amount of $170,000. *See* DE 1 at 9. However, in its Motion for a Default Judgment, Plaintiff only seeks damages of $30,000 pursuant to Section 605. DE 4, at 4; DE 8 at 13, 16. This is in keeping with the law in this Circuit, which allows a plaintiff to recover under only one of these statutes. *See, e.g., J&J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 472 (E.D.N.Y. 2009); *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 CV 1878, 2007 WL 2891016, at *3 (E.D.N.Y. Sept. 28, 2007); *Kingvision Pay-Per View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 62 (E.D.N.Y. 2006); *New Contenders, Inc. v. Diaz Seafood Corp.*, 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997) (citing *Int'l Cablevision Inc v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)).

[2] In the Complaint, Plaintiff also sought an award of attorney's fees. DE 1 at 9. However, the request for attorney's fees was withdrawn in the motion for a default judgment. DE 4; DE 8 at 17.

necessary to receive the signal of the Event. *Id.* ¶ 14. Defendants, however, did not contract with Plaintiff to obtain the rights to broadcast the Event. *Id.* ¶ 13. Nevertheless, on August 12, 2009, Defendants intercepted and/or received the signal of the Event and then transmitted, divulged, and published the same to its patrons. *Id.* ¶ 15.

## III. DISCUSSION

### A. Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007). The Complaint alleges violations of 47 U.S.C. §§ 553 and 605. Although these sections overlap,

> section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, [while] section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication.

*J&J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 471 (E.D.N.Y. 2009). However, in light of the Second Circuit's determination that a satellite signal is considered a radio communication under Title 47 (s*ee Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993)), "both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered 'radio communications.'" *Joe Hand Promotions, Inc.*, 2007 WL 2298372, at *4 (citing *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 434-35

(2d Cir. 2002)); *see also J&J Sports Prods. v. Welch*, No. 10-CV-0159, 2010 WL 4683744, at *2 (E.D.N.Y. Nov. 10, 2010) ("Section 553 and 605 apply, respectively, to cable and radio communications, but both provisions apply where a cable-borne transmission originates as a radio transmission.").

Since Defendants' default is deemed an admission of all the well-pleaded allegations in Plaintiff's complaint, Defendants have thus admitted to misappropriating Plaintiff's licensed exhibition of the Event, the transmission of which was electronically coded or "scrambled," when they intercepted, received, and transmitted the Event without authorization. Although the Complaint does not clearly state that the Event originated as a satellite signal, Plaintiff mentions that in order for the signal to be received, it had to be decoded with electronic decoding equipment along with satellite coordinates. This reference provides a sufficient basis to establish that the Event originated with a radio transmission and that Defendants' unauthorized interception violated Sections 553 and 605. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 472-73.

However, a more difficult question is whether individual liability should be imposed against Defendant Enrique Maldonado, whose only mention in the entire Complaint is the allegation that he is the owner of El Guadalajara. Compl. ¶ 6. Individual liability under the Federal Communications Act requires that the individual authorize the underlying violation. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 473; *Welch*, 2010 WL 4683744, at *6. "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F. Supp. 2d at 473 (quoting *Softel, Inc. v. Dragon Medical and ScientificCommc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997).

Here, the Plaintiff not only fails to allege that Defendant Maldonado was present on the night of the violation, but it also leaves out the necessary allegation that Maldonado authorized or supervised the violation. Courts which have recently addressed this issue of a lack of basic pleading have sided against individual liability. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 473 (finding that "plaintiff has made no allegation that [individual defendant] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it."); *J&J Sports Prods. v. Daley*, No. CV 06-0238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) ("there is nothing other than speculation to support the conclusion that [the individual defendant] played any part in the violations of the FCA committed by [the defendant establishment], and even less to support the conclusion that any role he did play would warrant imposing individual liability"). Conversely, the courts which have found individual liability are grounded in somewhat stronger factual contentions than the case at bar.[3] *See Welch*, 2010 WL 4683744, at *6 (finding individual liability where complaint alleges that defendant "was the individual with supervisory capacity and control over activities occurring within the Establishment on [the date of violation]"); *J&J Sports Prods. v. Benson*, No. CV-06-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (same). Accordingly, since Plaintiff's only allegation against Defendant Maldonado is mere ownership of the violating entity, I am respectfully recommending to Judge Hurley that individual liability should not be imposed against Defendant Enrique Maldonado. As such, the Defendants should not be held jointly and severally liable.

---

[3] The one exception appears to be in *Garden City Boxing Club, Inc. v. Extasis Corp.*, No. 07-CV-3853, 2008 WL 3049905 (E.D.N.Y. Aug. 1, 2008) which found individual liability on the mere allegation that the defendant owned the establishment. *Id.*, at *8. However, this finding was acknowledged and dismissed by the court in *291 Bar & Lounge*, which dealt with similar circumstances a year later.

B.  **Damages**

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). Plaintiff, however, must still prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Therefore, the only question remaining is whether Integrated Sports has provided adequate support for the relief it seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (internal quotation omitted).

Plaintiff has submitted an Affirmation of its outside counsel, Paul J. Hooten, ("Hooten Aff.") setting forth the amount of damages sought. DE 4. After the default judgment was entered by Judge Hurley, Plaintiff submitted a memorandum of law with exhibits annexed,

including the affidavit of private investigator Jonathan H. Tisk (annexed as Exhibit A to Plaintiff's Memorandum of Law [DE 8]) ("Tisk Aff.") and the affidavit of Doug Jacobs, President of Integrated Sports (annexed as Exhibit B to Plaintiff's Memorandum of Law [DE 8]) ("Jacobs Aff.") . The Court finds that pursuant to the applicable case law and the affidavits submitted by the Plaintiff, there is enough evidence to support an award of damages without a further hearing.

### 1. *Statutory Damages*

Section 605(e) of the FCA permits an aggrieved party to elect to recover either actual damages suffered as a result of the violation – and any profits of the violator that are attributable to the violation – or statutory damages not less than $1,000 or more than $10,000 for each violation. *See* 47 U.S.C. § 605(e)(3)(C)(i). "As actual damages frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead under 47 U.S.C. § 605(e)." *See 291 Bar & Lounge, Inc.*, 648 F. Supp. 2d at 474 n.3; *see also Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. Apr. 5, 2004) ("Statutory damages are appropriate where actual damages are difficult to prove."). Here, the Court agrees with the Plaintiff that statutory damages are appropriate in this case.

However, Integrated Sports argues that it is entitled to the full statutory damages in the amount of $10,000. DE 8 at 13. "The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J&J Sports Prods. v. Hot Shots, Inc.*, No. CV-09-1848, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010); *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 474 ("Section 605 vests the court with broad discretion in determining statutory damages."). Courts in this Circuit apply one of two methods in calculating statutory damages

regarding cases involving the unauthorized receipt and exhibition of pay-per-view events.[4] *See 291 Bar & Lounge*, 648 F. Supp. 2d at 474; *Autar*, 426 F. Supp. 2d at 63. Where the exact number of patrons is unknown, courts have awarded a flat sum per violation. *See Autar*, 426 F. Supp. 2d at 63. However, when there is evidence of the number of patrons present at the unauthorized broadcast, "courts multiply the number of patrons present . . . by a specific dollar amount, typically (but not always) the customary residential charge for the pay-per-view event being shown." *El Norteno Restaurant*, 2007 WL 2891016, at *3; *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 474 (calculating damages based on "the number of patrons observed in the defendant establishment" and then multiplying that figure by a set amount). In this District, courts have recently used $54.95 as the specific dollar amount, which is the price an individual would have to pay to view the event at home. *See Hot Shots*, 2010 WL 3522809, at *2; *J&J Sports Prods. v. Arhin*, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009).

Plaintiff alleges that the unauthorized broadcast occurred on August 12, 2009. Although what constitutes a "violation" is not defined in § 605, "most cases applying the statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club, Inc. v. Perez,* No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). Therefore, the Court is only dealing with one § 605 violation here. Furthermore, Plaintiff's private investigator Tisk, who was present the night of the violation, stated that the highest number of patrons present at Defendants' broadcast of the Event was 92. *See* Tisk Aff.

---

[4] The Court finds unpersuasive Plaintiff's argument that case law regarding the Copyright Act of 1976 is instructive on determining the amount of statutory damages to award here. Rather, there is ample case law on determining statutory damages specifically for violations of the Federal Communications Act.

at 2. Multiplying 92 patrons by $54.95 (the residential pay-per-view cost) yields a sum of $5,055.40. This figure, which falls within the allowable statutory damages provided under § 605, is what the Court believes should reflect the statutory damages available to Plaintiff. Accordingly, the Court declines to award statutory damages of $10,000, and instead, recommends to Judge Hurley that statutory damages of $5,055.40 be awarded to the Plaintiff.

### 2. *Enhanced Damages*

The Plaintiff maintains that it is proper to award additional damages in the amount of $20,000 pursuant to § 605. *See* DE 8 at 16. Section 605 states that

> [i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference to its requirements.'" *J&J Sports Prods. v. Echeverria*, No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). It has been determined that "[t]he broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *Welch*, 2010 WL 4683744, at *4; *Hot Shots*, 2010 WL 3522809, at *2 (same). The Plaintiff alleges that Defendants' interception, receipt and broadcast were done knowingly and unlawfully since the Defendants could not have obtained the transmission of the Event without committing wrongful acts to intercept and/or receive it. *See* Jacobs Aff. ¶ 9. This Court agrees. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 475 ("[I]t is difficult to see how the defendant could have

9

involuntarily intercepted-and exhibited-the Fight, as the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Courts apply various factors in determining whether a defendant's willful conduct justifies enhanced damages. These include "(i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Hot Shots*, 2010 WL 3522809, at *2; *see also Welch*, 2010 WL 4683744, at *4. In this action, there is no indication that Defendants are repeat violators. In addition, the only actual damages for which Plaintiff has provided supporting evidence is the licensing fee of $1,250 which Defendants would have had to pay to lawfully show the Event. *See* Jacobs Aff. ¶ 8 ("For example, for this particular event, if a commercial establishment had a maximum fire code occupancy of 130 persons, the commercial sublicense fee would have been $1,250.00."). Lastly, the Affidavit of Private Investigator Tisk indicated that the Defendant establishment required a $10.00 cover charge to enter. Tisk Aff. at 1.

Taking all these factors into account, the Court finds that Plaintiff is entitled to enhanced damages since (1) the Event was affirmatively and willfully intercepted for financial gain, and (2) there was no way that the broadcast could have been inadvertently intercepted. *See Welch*, 2010 WL 4683744, at *4. However, Plaintiff's contention that damages should be enhanced by $20,000, which is almost four times the statutory award, is unreasonable.

Courts typically fix the amount of enhanced damages as a multiple of the statutory damages awarded. *See Joe Hand Promotions, Inc. v. La Nortena Restaruant Inc.*, 2011 WL 1594827, at *4 (E.D.N.Y. March 28, 2011). The multiples most commonly used by this District are either two or three times the statutory damages. *Compare Kingvision Pay-Per-View v. Vibes Sports Bar and Café, Inc.*, No. 10-CV-127, 2011 WL 1331858, at *4 (E.D.N.Y. Mar. 15, 2011) (enhanced damages equal to three times the statutory damages); *Hot Shots*, 2010 WL 3522809, at *3 (same) *with J&J Sports Prods, Inc. v. Zevallos*, No. 10 CV 4049, 2011 WL 1810140, at *4 (E.D.N.Y. Apr. 22, 2011) (enhanced damages equal to two times the statutory damages); *La Nortena*, 2011 WL 1594827, at *4 (same). After reviewing numerous cases in this District which awarded enhanced damages, the Court finds guidance in *Vibes Sports* which granted enhanced damages equal to three times the statutory damages where statutory damages totaled just over $4,000 pursuant to a calculation based on 73 patrons. 2011 WL 1331858, at *4. In light of the similar circumstances between this case and *Vibes Sports* and the fact that El Guadalajara avoided having to pay the licensing fee and collected a cover charge, this Court, in its discretion, finds a proper enhancement of three times the statutory damages. Therefore, I respectfully recommend to Judge Hurley that enhanced damages be awarded to the Plaintiff in the amount of $15,166.20.

### 3. **Pre-judgment Interest**

The Plaintiff further asserts that it is entitled to pre-judgment interest calculated at the statutory rate of 9% per annum running from August 12, 2009 for a total of $3,375.00. *See* DE 8 at 17. However, § 605 does not refer at all to interest and the "majority of courts to have considered the issue have denied an award of prejudgment interest." *See Hot Shots*, 2010 WL

11

3522809, at *3.  Although a few courts in this District have granted pre-judgment interest at a rate of 9% pursuant to N.Y. C.P.L.R. §5004 under similar circumstances, the more recent decisions addressing this issue have denied such requests.  *See, e.g., Hot Shots*, 2010 WL 3522809, at *3*; Autar*, 426 F. Supp. 2d at 65.  The leading case on this issue, *Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226 (S.D.N.Y. Apr. 5, 2004), denied pre-judgment interest and reasoned that since claims for punitive damages are an exception to pre-judgment interest under the N.Y. C.P.L.R., "[s]tatutory damages under the Communication Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity." *Olivares*, 2004 WL 744226, at *5.  Based on this reasoning and the current status of the law on this issue, I respectfully recommend that pre-judgment interest not be awarded.

    4.   **Costs**

Lastly, the Plaintiff argues that under § 605, it is entitled to an award of $470 in costs.  *See* DE 8 at 17.  Section 605 expressly provides that if a violation has occurred, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *See* 47 U.S.C. § 605(e)(3)(B)(iii).  Based on this language, courts in this Circuit have held that under § 605, the award of costs and attorneys' fees is mandatory.  *See Autar*, 426 F. Supp. 2d at 65.[5]  However, Plaintiff has not submitted any documentation to substantiate costs allegedly incurred in this action.  With regard to the filing fee, the Court can ascertain that Plaintiff paid $350 to file its Complaint which was acknowledged by the Court

---

[5] As noted above, Plaintiff has withdrawn its request for attorney's fees.

12

through receipt #3128. *See* Electronic Order dated May 4, 2010. In light of this information, the Court recommends that Plaintiff be awarded $350 in costs.

**V.    CONCLUSION**

For the reasons set forth above, I respectfully recommend to Judge Hurley that individual liability not be imposed on Defendant Enrique Maldonado. However, I further recommend that damages be awarded against Defendant El Guadalajara in the amount of $20,571.60, broken down as follows:

- $5,055.40 in statutory damages;

- $15,166.20 in enhanced damages; and

- $350.00 in costs.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first class mail and to file proof of service on ECF.**

**SO ORDERED.**

Dated: Central Islip, New York
August 30, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge